OPINION
This appeal is taken from a final judgment of the Trumbull County Court of Common Pleas. Appellant, Lawrence J. Johnson, appeals from his conviction for robbery following a trial by jury.
On December 5, 1996, sixty-six year-old Edna Aho ("Aho") drove to a Kmart store on Belmont Avenue in Liberty Township. She intended to purchase cleaning supplies and drop off a roll of film containing pictures of her grandchildren. After parking her car, Aho grabbed a shopping cart that had been left in the parking lot by a previous patron. She placed her purse in the child seat portion of the cart and began to push it toward the main entrance.
As she neared the entrance, Aho noticed a Salvation Army volunteer bell ringer soliciting charitable donations in front of the store as is typical during the holiday season. Aho steered her shopping cart over to the volunteer so that she could place some money in the kettle. As Aho reached into her purse, however, appellant raced up from behind and grabbed the handbag. The force of this action caused Aho to be spun around as her hand was caught in the strap of the purse.
A struggle then ensued as appellant and Aho pulled the purse back and forth between them. After considerable tugging, appellant ordered Aho to drop the purse, but she did not comply. Appellant then struck Aho in the temple, thereby causing her to let go of the purse and fall to the ground. Appellant snatched the purse, jumped into a vehicle, and fled the scene.
While this was happening, the Salvation Army volunteer burst into the store yelling for help. A Kmart security guard proceeded to run outside the store. Once there, he witnessed the end of the struggle wherein appellant hit Aho in the head and then fled with the purse in tow. Although the security guard did not get a good look at the robber, he was able to record the license plate number of the getaway car.
The Liberty Township Police Department responded to the scene and commenced an investigation. By using the license plate number, the police discovered that the vehicle was registered to Kelly McGuire ("McGuire"). Upon being contacted by the police, McGuire initially stated that she had lent her automobile to another woman on December 5, 1996. After further questioning, however, McGuire admitted to the police that appellant had borrowed her car on the day in question.
The Liberty Township police immediately obtained a previous mug shot of appellant from the Youngstown Police Department for the purpose of having the witnesses attempt to identify him as the assailant. They then used a computer at the Youngstown police station to generate a photo array depicting six men, including appellant. Aho and the Salvation Army volunteer separately viewed the photo array only one day after the incident. Both women positively identified appellant by selecting his photograph from the pictorial lineup.
In January 1997, the Trumbull County Grand Jury indicted appellant on one count of robbery in violation of R.C.2911.02(A)(2). On April 18, 1997, appellant filed a motion to suppress all evidence relating to the pretrial photo array and any subsequent in-court identifications that might be made by Aho and the Salvation Army volunteer. After conducting suppression hearing, the trial court denied the motion by judgment entry on June 11, 1997.
The matter proceeded to trial on September 2, 1997. During its case-in-chief, the prosecution presented numerous witnesses on behalf of the state, including Aho, the Salvation Army volunteer, the security guard, and McGuire. Aho and the volunteer both identified appellant in court as the man who had committed the purse snatching. Appellant testified for the defense and denied robbing Aho at the Kmart store on the day in question. The jury ultimately convicted appellant of robbery as charged in the indictment. Thereafter, on November 12, 1997, the trial court sentenced appellant to seven years in prison.
From this judgment, appellant filed a timely appeal with this court. He now asserts the following assignments of error:
 "[1.] The trial court erred in denying appellant's motion to suppress the identification evidence.
 "[2.] The trial court erred by denying appellant's motions for mistrial.
 "[3.] Appellant's conviction for robbery was made against the manifest weight of the evidence."
In his first assignment, appellant posits that the trial court erred by denying his motion to suppress. According to appellant, the trial court should have suppressed both the pretrial and subsequent in-court identifications made by Aho and the Salvation Army volunteer.
The identification of a criminal suspect implicates due process considerations. As such, it is necessary to have a standard for determining whether a particular identification comports with due process of law.
The law in this area is well-settled. In Neil v. Biggers
(1972), 409 U.S. 188, the United States Supreme Court held that in order to determine the admissibility of a pretrial identification of a suspect by a witness, a trial court must engage in a two-step analysis. First, the court must determine whether the identification procedure was unduly suggestive. If the procedure was overly suggestive, then the court must proceed to the second step in which it ascertains whether there was a substantial likelihood of misidentification. Biggers, 409 U.S. at 197-199. Therefore, before identification testimony will be suppressed, the court must find that the procedure employed by the police was so impermissibly suggestive as to give rise to the substantial likelihood of misidentification.
In the second step of the Biggers test, the trial court must consider the "totality of the circumstances" under which the pretrial identification was made in order to determine whether or not the identification is reliable:
 "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Id. at 199-200. See, also, State v. Jells (1990), 53 Ohio St.3d 22, 27.
The burden is on the defendant to prove that the procedure employed was unfairly suggestive and that the resulting identification was unreliable based on the totality of the circumstances standard adopted inBiggers. State v. Green (1996), 117 Ohio App.3d 644,652-653; State v. McDade (Sept. 25, 1998), Lake App. No. 97-L-059, unreported, at 4, 1998 WL 682360. If the defendant fails to satisfy the first part of this burden, neither the trial court nor an appellate court need consider the totality of the circumstances. Green,117 Ohio App.3d at 653; McDade, 1998 WL 682360, at 4.
Even if the identification procedure contained notable flaws, this alone does not necessarily preclude the admissibility of the subsequent in-court identification. State v. Moody (1978),55 Ohio St.2d 64, 67, citing State v. Barker (1978), 53 Ohio St.2d 135,142-143. Reliability "is the linchpin in determining the admissibility of identification testimony[.]" Manson v.Brathwaite (1977), 432 U.S. 98, 114. In order to suppress identification testimony, there must be "`a very substantial likelihood of irreparable misidentification.'" Jells,53 Ohio St. 3d at 27, quoting Simmons v. United States (1968),390 U.S. 377, 384.
An unnecessarily suggestive identification procedure does not run afoul of the Due Process Clause if the identification is otherwise imbued with sufficient indicia of reliability. The critical issue is whether the identification is reliable under the totality of the circumstances, notwithstanding the suggestiveness of the confrontation procedure. See Biggers, 409 U.S. at 199
(observing that the central question is whether "the identification was reliable even though the confrontation procedure was suggestive"). Therefore, even if the procedure was suggestive, the challenged identification is still admissible so long as it is reliable. Moody, 55 Ohio St.2d at 67, citingManson, 432 U.S. at 151; see, also, Green,117 Ohio App.3d at 652.
In the case sub judice, appellant asserts that the pretrial identification of him as the purse-snatching robber by Aho and the Salvation Army volunteer did not comport with due process pursuant to both prongs of the Biggers test. Specifically, appellant claims that the photo array presented by the police to the two witnesses was unduly suggestive, thereby creating a substantial likelihood that he was misidentified as the robber.
With regard to the first prong of the Biggers test, appellant proposes that the photo array employed by the police was unduly suggestive for one reason, to wit: he was the only one of the six men depicted in the array who was clean shaven. On the day of the robbery, Aho and the Salvation Army volunteer had given descriptions of the assailant to the police in which both women indicated that the suspect had no facial hair. Appellant, in effect, contends that the police rigged the photo array to encourage Aho and the volunteer to select appellant's photograph based on the fact that his was the only picture of a clean shaven male.
A review of the photo array reveals that appellant was, in fact, clean shaven in his picture. Four of the other men depicted in the array had either a moustache or a goatee. The remaining man had only a "shadow" moustache.
Beyond this, however, the six photographs in the array all depict similar black males with normal complexions, round faces, and short hair. The small amounts of facial hair were not particularly conspicuous. The police officer from the Liberty Township Police Department who assembled the computer-generated array testified at the suppression hearing. During his testimony, the officer indicated that he entered characteristics into the computer to create the array based on the witnesses' description of a black male who was approximately 5' 7" to 5' 10" in height with a stocky build, short hair, and a round face.
In retrospect, the inclusion of appellant as the only clean shaven suspect was a risky decision. Under other circumstances, such a choice could have fatally tainted the photo lineup. In this case, however, we do not believe that the photo array as assembled was overly suggestive. While it is true that appellant was the only man who was totally clean shaven, this fact alone does not render the array impermissibly suggestive given the other physical similarities of the six men depicted.
Moreover, even if we assume arguendo that the photo array was suggestive, appellant's argument would fail under the second prong of the Biggers analysis. Specifically, based on the totality of the circumstances, there was overwhelming evidence to suggest that the pretrial identifications made by Aho and the Salvation Army volunteer were reliable.
Upon considering the five factors set forth in Biggers relating to the reliability of an identification, it is apparent that the identifications of appellant as the perpetrator were clearly admissible. The testimony of Aho and the Salvation Army volunteer at the suppression hearing and at trial demonstrated that each woman had an excellent opportunity to view appellant at the time of the crime. In this regard, both women testified to viewing appellant at extremely close range in broad daylight for a significant amount of time. Their testimony also evidenced the fact that Aho and the volunteer each possessed a high degree of attention during the robbery.
Beyond this, both women gave descriptions of appellant to the police on the day of the incident. Aho even noted her assailant's remarkable similarity to a famous entertainer. The evidence at the suppression hearing plainly demonstrated that these descriptions accurately matched appellant's actual physical appearance. The Liberty Township police officer who showed the photo array to Aho and the Salvation Army volunteer also testified that each woman repeated her respective description of the suspect prior to being shown the pictorial lineup the day after the robbery. Moreover, Aho and the volunteer each exhibited a high level of certainty when selecting appellant's picture from the photo array and when identifying appellant in the courtroom at trial
Finally, the length of time between the crime and the identification was virtually negligible. The robbery occurred on December 5, 1996. The police presented the photo array to both witnesses the very next day.
Thus, even if we assume for the sake of argument that the photo array was suggestive, the pretrial and subsequent in-court identifications of appellant by Aho and the Salvation Army volunteer were unquestionably reliable. As stated previously, reliability is the linchpin in determining the admissibility of identification testimony. Upon review of the totality of the circumstances, appellant failed to carry his burden of proving that the photo array resulted in a substantial likelihood of irreparable misidentification. The trial court properly denied the motion to suppress the challenged testimony. The first assignment is without merit.
In his second assignment of error, appellant maintains that the trial court erred by denying two motions for a mistrial. The Supreme Court of Ohio has made the following observation regarding mistrials:
 "In evaluating whether the declaration of a mistrial was proper in a particular case, this court has declined to apply inflexible standards, due to the infinite variety of circumstances in which a mistrial may arise. * * * This court has instead adopted an approach which grants great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial." (Citations omitted.) State v. Glover (1988), 35 Ohio St.3d 18, 19.
Thus, the decision whether to grant or deny a mistrial under Crim.R. 33 rests within the sound discretion of the trial court. Id.; State v. Sage
(1987), 31 Ohio St.3d 173, 182; State v. Widner (1981),68 Ohio St.2d 188, 190; State v. Patterson (May 22, 1998), Trumbull App. No. 96-T-5439, unreported, at 6, 1998 WL 310737. Mistrials should only be declared when the ends of justice so require and a fair trial is no longer possible. State v. Franklin (1991), 62 Ohio St.3d 118,127; Patterson, 1998 WL 310737, at 6.
In the case at bar, the basis for the first mistrial motion was the following exchange in which the prosecutor questioned Aho on direct examination about her prior identification of appellant in the photo array:
 "Q. And before they asked you to look at this did they tell you they had a suspect? * * *
 "A. I'm just thinking to myself. You keep asking what did they ask, what did they ask? This has been one year ago. I know specifics that really stick, you know. And being asked this by this officer, that officer, this thing, that thing, going to court so many times and going down to the parole board, in front of them and —"
At that point, counsel for appellant objected, and the trial court sustained the objection. Subsequently, counsel moved for a mistrial at the close of the prosecution's case-in-chief, but the trial court denied the motion. On appeal, appellant claims that he was unfairly prejudiced by Aho's reference to having gone "down to the parole board[.]" According to appellant, the obvious import to be drawn by the jury was that Aho had attended a parole hearing involving him.
Defense counsel made a second motion for a mistrial during the state's cross-examination of appellant. During this questioning, the prosecutor asked appellant whether he had previously been convicted of the felony offense of robbery. Appellant admitted that he had a prior conviction for robbery. The prosecutor then inquired as to whether appellant was on parole at the time he allegedly robbed Aho. Appellant answered in the affirmative. Finally, the prosecutor asked whether appellant currently resided in a state correctional facility. Again, appellant responded affirmatively.
At that point, defense counsel moved for a mistrial, and the parties went into chambers with the judge. After hearing arguments from both sides, the trial court denied the motion. When the trial resumed, the trial court gave a limiting instruction to the jury. In this instruction, the court explained that evidence of appellant's prior felony conviction could be used solely for the limited purpose of assessing his credibility as a witness. The trial court expressly conveyed to the jury that such evidence could not be considered to prove the character of appellant in order to show that he acted in conformity therewith.
On appeal, appellant simply asserts that the two aforementioned incidents denied him a fair trial, thereby entitling him to a mistrial. We disagree.
As a general matter, Evid.R. 609 governs the impeachment of a witness by evidence of his or her prior criminal convictions. Evid.R. 609(A)(2) expressly allows the use of felony convictions to impeach the credibility of the accused in a criminal proceeding. It provides:
"(A) General rule
 "For the purpose of attacking the credibility of a witness:
"* * *
 "(2) notwithstanding Evid. R. 403(A), but subject to Evid. R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
The use of such convictions for impeachment purposes is subject to a temporal limitation. Evid.R. 609(B) mandates in part:
 "Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement, or the termination of probation, or shock probation, or parole, or shock parole imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."
In the instant matter, it was apparently uncontroverted that appellant was still on parole for the prior robbery conviction at the time he allegedly mugged Aho in front of the Kmart store. If appellant was still on parole for the prior offense, then "a period of more than ten years" had obviously not elapsed since the termination of such parole.
Appellant took the witness stand at trial and testified on his own behalf. During his testimony, he denied robbing Aho at Kmart on the day in question. Given this, it is manifestly apparent that appellant's credibility was at issue.
In light of Evid.R. 609, the trial court did not abuse its discretion by denying the second motion for a mistrial. It was entirely appropriate under Evid.R. 609(A)(2) for the state to introduce evidence of appellant's prior felony conviction for the limited purpose of impeaching his credibility. By inquiring into this topic on cross-examination of appellant, the prosecutor employed a proper method of proof as provided for by Evid.R. 609(F). Moreover, the evidence was admissible given the time limits set forth in Evid.R. 609(B). Finally, the trial court providently gave a limiting instruction to the jury immediately after the conference in chambers in accordance with Evid.R. 105.[1] A jury is presumed to follow the instructions given to it by the trial judge. State v. Loza (1994), 71 Ohio St.3d 61,75; State v. Henderson (1988), 39 Ohio St.3d 24, 33; see, also,State v. Zuern (1987), 32 Ohio St.3d 56, 61.
The trial court also did not abuse its discretion with respect to the first motion for a mistrial. Aho's reference to having attended a parole hearing was oblique and fleeting in nature. Even if Aho should not have alluded to the parole hearing in her testimony, the introduction of evidence relating to appellant's status as a parolee for a prior robbery conviction was immediately forthcoming when appellant took the witness stand. Thus, any passing reference Aho made to a parole hearing merely foreshadowed appellant's own admission on cross-examination that he had been on parole at the time he allegedly committed the Kmart robbery.
The trial court did not abuse its discretion by denying the two motions for a mistrial. The second assignment is not well-founded.
In his third and final assignment of error, appellant argues that the jury verdict convicting him of robbery was against the manifest weight of the evidence. The test for whether a criminal conviction runs counter to the weight of the evidence is as follows:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983), 20 Ohio App.3d 172, 175. See, also, State v. Thompkins
(1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring).
As a general matter, the weight to be given the evidence and the credibility of witnesses are primarily for the trier of fact to decide. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. When reviewing questions of weight, the role of an appellate court is to engage in a limited weighing of the evidence adduced at trial in order to determine whether the state appropriately carried its burden of persuasion.
In the present appeal, appellant offers various reasons as to why his conviction was not supported by the evidence adduced at trial. Such reasons include: (1) the Kmart security guard could not identify appellant as the assailant; (2) McGuire's testimony to the effect that appellant had borrowed her car on the day of the robbery was not credible because McGuire initially lied to the police on this point; and (3) the police did not find Aho's purse in the car when the automobile was inventoried.
The fact that the security guard could not identify appellant is irrelevant to whether appellant was the assailant. The security guard did not identify appellant as the robber because he did not get a good look at appellant before the latter fled from the scene of the crime. Moreover, Aho and the Salvation Army volunteer did have ample opportunity to view the mugger, and both women positively identified appellant as the perpetrator.
With respect to McGuire, it is true that she initially told the police that someone else had borrowed her car on December 5, 1996. McGuire testified at trial that she "figured something happened and I knew that I gave him [appellant] the car and I didn't want to get him in trouble so I just lied." When the police questioned McGuire again the day after the robbery, she told them the truth, to wit: that appellant had actually borrowed the car. The fact that she initially conveyed misinformation to the police does not mean that appellant's conviction was counter to the evidence. It was for the jury to assess McGuire's credibility, and the jury obviously gave credence to her testimony at trial.
Finally, the fact that the police did not recover the stolen purse upon conducting an inventory of McGuire's car also signifies nothing in the big picture. Obviously, appellant had more than ample opportunity to dispose of the purse before returning the vehicle to McGuire.
After reviewing the entire record, it is obvious that the conviction was not against the weight of the evidence. There was rather overwhelming evidence that appellant committed the offense in question. The positive identifications made by Aho and the Salvation Army volunteer were especially convincing and served to support the guilty verdict. The third assignment is meritless.
Based on the foregoing analysis, the assignments of error are not well-taken. Accordingly, the judgment of the trial court is affirmed.
 __________________________________________ PRESIDING JUDGE JUDITH A. CHRISTLEY
NADER, J., O'NEILL, J., concur.
[1] Evid.R. 105 states:
 "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request of a party, shall restrict the evidence to its proper scope and instruct the jury accordingly."